1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                San Francisco Division

11 | UNITED STATES OF AMERICA FUTSAL    | Case No. 17-cv-04206-LB
   | FEDERATION, a California nonprofit  |
12 | corporation, doing business as United States |
   | Futsal, U.S. Futsal, and USFF,      |
13 |                                     | **ORDER**
   |              Plaintiff,             |
14 |                                     | Re: ECF No. 15
   |        v.                           |
15 |                                     |
   | USA FUTSAL LLC, a North Carolina    |
16 | Limited Liability Company, doing business |
   | as USA Futsal,                      |
17 |                                     |
   |              Defendant.             |
18

19                    **INTRODUCTION**

20        The plaintiff is United States of America Futsal Federation, and it sued the defendant USA

21 Futsal LLC for trademark infringement in violation of 15 U.S.C. § 1114(a) and California

22 common law, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair business

23 practices in violation of California Business & Professions Code § 17200, and injury to business

24 reputation in violation of California Business & Professions Code § 14330.[1] Futsal is a form of

25
26
27

———————————

28 [1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
citations are to the ECF-generated page numbers at the top of documents.

indoor soccer.[2] The plaintiff organizes futsal clinics, events, and tournaments; the defendant does too.[3] The plaintiff served the defendant, which did not respond to the complaint or otherwise appear.[4] After the clerk's entry of default,[5] the plaintiff moved for default judgment and ultimately limited its claim for relief to its costs of $1,167.22 and an injunction to prevent the defendant's use of the plaintiff's mark.[6] The defendant has not appeared. A magistrate judge may not exercise jurisdiction under 28 U.S.C. § 636(c)(1) without the consent of all parties. Ultimately, the court will direct the Clerk of Court to reassign the case to a district judge and will recommend that the new judge enter default judgment in favor of the plaintiff and against the defendant.

But — as discussed below and at the May 16, 2018 hearing — the defendant may have rebranded its business and stopped any infringing use of the plaintiff's marks. It may be more cost-efficient for both parties to settle the case. And for the defendant, it may be useful to avoid a default judgment. The plaintiff agreed that (1) the court would issue this order with the analysis that will be in the court's report and recommendation for entry of default judgment, and (2) the plaintiff's counsel will serve the order on the defendant and its counsel (listed on the North Carolina Secretary of State's website) to try to settle the dispute and the scope of the relief. The court thus issues this order and asks for an update from counsel by June 21, 2018.

## STATEMENT

### 1. The Plaintiff and its Trademarks

The plaintiff United States of America Futsal Federation is a nonprofit corporation with its principal place of business in Oakland, California; it "is engaged in the business of, *inter alia*,

---

[2] *Id.* at 3–4 (¶ 9) ("Futsal is the way the world plays indoor soccer." It is played on an indoor hard court by two teams of five players with a smaller ball with less bounce than a regular soccer ball; on information and belief, futsal is played on all continents, in over 100 countries, by more than 12 million players.).

[3] *Id.* at 3 (¶¶ 5–6).

[4] *See* Docket.

[5] Clerk's Entry of Default – ECF No. 12.

[6] Mot. for Default Judgment – ECF No. 15; Pl.'s Second Supp. Br. – ECF No. 25; Chitsaz Supp. Decl. – ECF No. 33.

arranging and conducting futsal training clinics and indoor and outdoor futsal events and tournaments, and related activities."[7] It does business as United States Futsal, U.S. Futsal, and USFF.[8]

The plaintiff "has been governing the sport of futsal in the United States since 1981, at which time it began using the distinctive UNITED STATES FUTSAL and U.S. FUTSAL trademarks in interstate commerce in connection with their futsal training, events, tournaments, and sale of its related goods and services."[9] The plaintiff has been promoting futsal leagues for over three decades; since at least 1985, it has been sponsoring state, regional, and national futsal leagues and tournaments.[10] It has more than 110,000 registered players of all ages throughout the United States and has leagues and programs in all 50 states.[11] It is the only futsal organization "directly affiliated with U.S. Soccer and U.S. Youth Soccer."[12]

The plaintiff "organizes its futsal leagues and tournaments, and offers its futsal-related services, under its UNITED STATES FUTSAL and U.S. FUTSAL brand, and in connection with the UNITED STATES FUTSAL and U.S. FUTSAL trademarks, and offers and sells its futsal-related goods and services throughout the United States and internationally."[13] At all times, the plaintiff operated its business under the trademarks "United States Futsal" and "U.S. Futsal."[14]

The plaintiff has been the sole and exclusive owner of the following registered trademarks.[15]

The first is United States Futsal:

> Plaintiff is the owner of the federally registered trademark UNITED STATES FUTSAL in Class 41 for "entertainment services, namely, arranging and conducting sports training clinics and 18 indoor/outdoor sporting events in the nature of futsal games," Registration No. 4,297,129. The mark has been registered

---

[7] Compl. – ECF No. 1 at 3 (¶ 5).

[8] *Id.*

[9] *Id.* (¶ 8).

[10] *Id.* at 4 (¶ 10).

[11] *Id.* (¶ 11).

[12] *Id.* (¶ 12).

[13] *Id.* (¶ 13).

[14] *Id.* (¶ 14).

[15] *Id.* (¶¶ 15–18).

since March 5, 2013, and has been in consistent, uninterrupted use in interstate commerce since at least 1987 in connection with the aforementioned services. The registration is in good standing.[16]

The second is U.S. Futsal:

The Plaintiff is the owner of the federally registered trademark U.S. FUTSAL in Class 41 for "entertainment services, namely, arranging and conducting sports training clinics and indoor/outdoor sporting events in the nature of futsal games," Registration No. 4,490,564. The mark has been registered since March 4, 2014, and has been in consistent, uninterrupted use in interstate commerce since at least 1987 in connection with the aforementioned services. The registration is in good standing.[17]

The third is U.S. Futsal:

Plaintiff is the owner of the federally registered trademark U.S. FUTSAL in Class 25 for "clothing, namely, warm up suits, jerseys and trousers," and Class 28 for "sporting goods, namely, balls," Registration No. 4,160,663. The mark has been registered since June 19, 2012, and has been in consistent, uninterrupted use in interstate commerce since at least December of 2003 in connection with the aforementioned goods. The registration is in good standing.[18]

The plaintiff does not claim right to the generic term "futsal" but claims "the exclusive right to use the UNITED STATES FUTSAL and the U.S. FUTSAL composite marks in connection with its organization, the activities it offers and sponsors, and the clothing and equipment products associated therewith."[19] The complaint pleads the following about use:

22. The U.S. FUTSAL Marks have been in use in interstate commerce in some form since at least 1987, and have become well-known based on Plaintiff's consistent, uninterrupted, and exclusive use in connection with futsal-related services and goods since that time. Through extensive and continued use, the U.S. FUTSAL Marks have become exclusively associated by the trade and public with Plaintiff, and have developed considerable goodwill.

23. By virtue of advertising and sales, together with consumer acceptance and recognition, Plaintiff's U.S. FUTSAL Marks identify Plaintiff's futsal-related services and goods only, and distinguish it from services and goods offered and sold by others. Plaintiff's U.S. FUTSAL Marks have thus become and are a

---

[16] *Id.* (¶ 15). Exhibit A to the complaint (referenced later in ¶ 15) is a copy of the Trademark Status and Document Retrieval ("TSDR") printout for the UNITED STATES FUTSAL mark. Exhibit B is the Registration Certificate for the UNITED STATES FUTSAL mark, Registration No. 4,297,129. Exs. A & B – ECF Nos. 1-1 & 1-2.

[17] *Id.* at 4–5 (¶ 16). Exhibit C to the complaint is a copy of the TSDR printout for the U.S. FUTSAL mark. Exhibit D is the Registration Certificate for the U.S. FUTSAL mark, Registration No. 4,490,564. Exs. C & D – ECF Nos. 1-3 & 1-4.

[18] *Id.* at 5 (¶ 17). Exhibit E to the complaint (referenced later in ¶ 17) is a copy of the SDR printout for the U.S. FUTSAL mark. Exhibit F is a copy of the Registration Certificate for the U.S. FUTSAL mark, Registration No. 4,160,663.

[19] *Id.* at 5–6 (¶ 21).

valuable asset symbolizing Plaintiff, its quality goods and services, and its goodwill.

24. Plaintiff's futsal leagues, tournaments, events, and related goods offered and sold under the U.S. FUTSAL Marks have achieved critical and commercial success and the strength of the long-established UNITED STATES FUTSAL and U.S. FUTSAL brand is one of Plaintiff's most valuable assets.

25. In connection with its futsal business, since on or about March 7, 1996, Plaintiff has operated and continues to operate a website located at the URL <futsal.com> ("Plaintiff's Website"). Beginning in or about March of 1996, and on an ongoing basis, Plaintiff has advertised and continues to advertise its futsal tournaments, leagues, and related goods and services on Plaintiff's Website using the U.S. FUTSAL Marks. A true and correct copy of a screenshot of the home page of Plaintiff's Website, prominently displaying the U.S. FUTSAL Marks, is attached hereto as Exhibit "G," and incorporated herein by this reference.[20]

## 2. The Defendant and its Infringing Activities

The plaintiff alleges on information and belief that the defendant USA Futsal LLC, doing business as USA Futsal, is a limited liability corporation (organized under the laws of the State of North Carolina with its principal place of business in Highland Village, Texas) that "is engaged in the business of, inter alia, providing instruction related to futsal, providing entertainment services, including organizing amateur and professional futsal events, tournaments, leagues, camps and clinics, including, but not limited to, under the name USA Futsal."[21] "On information and belief, [the defendant] . . . offers its futsal-related services throughout the United States, including in San Francisco, California, and internationally."[22] The complaint alleges the following:

27. On information and belief, in 2010 USA Futsal was formed in Cary, North Carolina, as "Club Ambassadors, LLC".

28. On information and belief, in 2014, USA Futsal was renamed "USA Futsal LLC".

29. On information and belief, at the time of changing the name from Club Ambassadors, LLC to USA Futsal LLC, and selecting the infringing mark USA FUTSAL, (the "USA FUTSAL Mark"), USA Futsal knew or should have known of Plaintiff's senior use of the U.S. FUTSAL Marks.

30. On information and belief, USA Futsal is the owner of the URL <usafutsal.com>, and is the operator of the website appearing at that URL ("USA Futsal's Website"). USA Futsal's Website advertises its futsal leagues,

---

[20] *Id.* at 6 (¶¶ 22–25).

[21] *Id.* at 3 (¶ 6).

[22] *Id.* at 7 (¶ 26).

tournaments, camps, and related goods and services. The URL was registered on November 30, 2011, and is registered to "USA Futsal LLC." A true and correct copy of the WHOIS URL ownership record is attached hereto as Exhibit "H," and incorporated herein by this reference.

31. The USA FUTSAL Mark is prominently displayed on USA Futsal's Website. A true and correct copy of a screenshot of the home page of USA Futsal's Website is attached hereto as Exhibit "I," and incorporated herein by this reference.

32. On information and belief, Defendant, itself or through its affiliates, agents, or employees, has registered a Facebook page (https://www.facebook.com/USAfutsal/), as shown in the screenshot attached as Exhibit "J," and incorporated herein by this reference.

33. On information and belief, Defendant, itself or through its affiliates, agents, or employees, has registered an Instagram page https://www.instagram.com/usafutsal/), as shown in the screenshot attached as Exhibit "K", and incorporated herein by this reference.

34. On information and belief, Defendant, itself or through its affiliates, agents, or employees, has also registered the Twitter handle @USAFutsal (https://twitter.com/USAFutsal) as shown in the screenshot attached as Exhibit "L," and incorporated herein by this reference.

35. Defendant uses the Facebook, Instagram, and Twitter social media sites set forth in Paragraphs 33 through 34 with its infringing USA FUTSAL Mark, where Defendant is actively marketing and promoting its futsal-related services and goods.

36. On December 16, 2014, USA Futsal applied to register the Service Mark USA FUTSAL with the US PTO in Class 41 for "educational services, namely, providing instruction in the field of the importance of futsal as a development tool and entertainment sport; entertainment services, namely, organizing amateur and professional futsal events, tournaments, leagues, camps and clinics," Serial Number 86/481,760. On May 12, 2016, the USPTO refused the application on the grounds of a likelihood of confusion with Plaintiff's registered U.S. FUTSAL marks and registrations. Defendant USA Futsal failed to respond to the Office Action refusing its application, and the USPTO deemed the application abandoned. Attached as Exhibit "M" and incorporated herein by this reference is a true and correct copy of the TSDR printout for the USA FUTSAL mark, Serial No. 86/481,760.[23]

. . . .

39. Defendant USA Futsal's mark is nearly identical to Plaintiff's marks.

40. Defendant's USA FUTSAL mark and Plaintiff's UNITED STATES FUTSAL and U.S. FUTSAL mark[s] are nearly identical in sight, sound, meaning, and commercial impression.[24]

. . . .

---

[23] *Id.* at 7–8 (¶¶ 27–36).

[24] *Id.* at 8–9 (¶¶ 39–40).

42. Defendant uses the USA FUTSAL Mark in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of its futsal-related services and goods – which are identical to the futsal-related services and goods offered and sold by Plaintiff under its U.S. FUTSAL Marks. As such, Defendant's use of the USA FUTSAL Mark is likely to cause confusion, mistake, or deception among consumers as to the source, quality, and nature of Defendant's services and goods.[25]

. . . .

44. When Plaintiff determined that Defendant's USA Futsal Mark infringed Plaintiff's U.S. FUTSAL marks, Plaintiff informed Defendant of the infringement, demanding that Defendant ceases and desist from further use of the infringing mark. In response, Defendant summarily refused Plaintiff's demand to cease and desist, indicating its purported belief that there is no likelihood of confusion. Defendant continues to use the infringing mark in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of its futsal-related services and goods.[26]

### 3. Procedural History and Other Relevant Information

On July 24, 2017, the plaintiff filed its complaint, raising five claims: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a); (2) false designation of origin, in violation of 15 U.S.C. § 1125(a); (3) California common-law trademark infringement; (4) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200; and (5) injury to business reputation in violation of Cal. Bus. & Prof. Code § 14330.[27] On September 30, 2017, the plaintiff personally served the complaint on Robert David Andrews — Manager and President of defendant USA Futsal LLC — at 935 Crown Court, Highland Village, Texas 75077.[28] The defendant did not respond or otherwise appear.

The plaintiff moved for entry of default, and on November 29, 2017, the clerk entered the default.[29] The plaintiff moved for default judgment, asking for damages and an injunction.[30] The plaintiff served the motion for default judgment by mail to Robert David Andrews at the Texas

---

[25] *Id.* at 9 (¶ 42).

[26] *Id.* at 9 (¶ 44).

[27] *Id.* at 10–16.

[28] Proof of Service – ECF No. 9; Davis Decl. – ECF No. 15-1 at 2 (¶ 2).

[29] Mot. for Entry of Default – ECF No. 11; Entry of Default – ECF No. 12.

[30] Mot. for Default Judgment – ECF No. 15.

1    address and also at the registered office address at 310 S. Harrington Street, Raleigh, NC 27603.[31]

2    After discussing issues about damages with the court at a hearing on February 22, 2018[32] and after

3    the court's subsequent order about damages,[33] the plaintiff limited its request for relief to its costs

4    and an injunction prohibiting use of the marks.[34]

5        To obtain the information to serve the defendant, the plaintiff's counsel accessed the website

6    for the North Carolina Secretary of State. He downloaded the 2017 Annual Report, which lists the

7    defendant's registered office at 310 S. Harrington St., Raleigh, NC 27603-1818, its principal

8    office at 935 Crown Court, Highland Village, Texas 75077, and its registered agent as Robert

9    David Andrews, Jr.[35] In October 2017, the plaintiff's counsel accessed the website for the Texas

10   Secretary of State and downloaded the Certificate of Formation for USA Futsal Corporation, a

11   nonprofit corporation formed in Texas on April 11, 2017, and which included as a director Robert

12   David Andrews, Jr. (at the Highland Village, Texas address) as one of the three directors.[36]

13       The complaint alleges "on information and belief" that USA Futsal was formed in 2010 in

14   Cary, North Carolina, as "Club Ambassadors, LLC" and was renamed "USA Futsal LLC" in

15   2014.[37] The website for the North Carolina Secretary of State now lists the defendant's current

16   legal name as A2 Sports LLC and its previous legal names as Club Ambassadors LLC and USA

17   Futsal LLC.[38] The website lists the corporation's current status as active, the corporation's

---

[31] Proof of Service – ECF No. 15-7 at 2. As discussed below, North Carolina corporate records show that the defendant's registered office is in Raleigh, NC, and its principal office is in Highland Village, TX.

[32] Minute Entry – ECF No. 16.

[33] Order – ECF No. 20.

[34] Pl.'s Supp. Br. – ECF No. 25. The plaintiff filed an earlier brief about damages at ECF No. 18 and served that brief on Mr. Andrews at the Texas and North Carolina Addresses. ECF Nos. 18, 22.

[35] Davis Decl. – ECF No. 15-1 at 2 (¶ 2); Ex. 1 – ECF No. 15-2 at 2. It lists Robert David Andrews, Sr. of Cary, North Carolina as an additional member. Ex. 1 – ECF No. 15-2 at 2.

[36] Ex. 2 – Ex. 15-3 at 3. It also lists Robert David Andrews, Sr. of Cary, North Carolina as a director. *Id.*

[37] Compl. – ECF No. 1 at 7 (¶¶ 27–28).

[38] *See* https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited May 14, 2018). The court may take judicial notice of information on government websites that is not reasonably subject to dispute as a matter of public record. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

formation date of August 4, 2010, its registered agent as Robert Andrews, Jr., its registered office at the North Carolina address, and the principal office and mailing address at the Texas address.[39]

As discussed above in the section describing the defendant's infringing activities, the plaintiff identifies the defendant's use of a website and social-media sites and includes screen shots.[40] The specific sites are usafutsal.com, https://www.facebook.com/USAfutsal/, https://www.instagram.com/usafutsal/, and https://twitter.com/USAFutsal. Since the filing of the complaint, the defendant has changed the content of the sites.[41] First, the usafutsal.com website now redirects to https://unitedfutsal.com/; the defendant's name is reflected as United Futsal Association, and the infringing marks are not on the site.[42] Second, the Facebook page at https://www.facebook.com/USAfutsal is not an active site, meaning, the content is not available.[43] Third, the Instagram site similarly shows no content.[44] Fourth, the Twitter site is now suspended.[45]

The court held a hearing on May 16, 2018, and the defendant did not appear.[46] The plaintiff agreed that the default-judgment order would be limited to the two federal claims: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a); and (2) false designation of origin, in violation of 15 U.S.C. § 1125(a). Counsel also agreed with the court's suggestion that a more cost-effective and efficient way of resolving the dispute would be for (1) the court to issue an order with the analysis that will be in the court's report and recommendation for entry of

---

[39] *See* https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited May 14, 2018).

[40] Compl. – ECF No. 1 at 7–8 (¶¶ 33–35); Ex. G – ECF No. 1-7; Ex. I – ECF No. 1-9; Ex. J –ECF No. 1-10; Ex. K – ECF No. 1-11; Ex. L – ECF No. 1-12.

[41] The court can consider the websites under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[42] *See* usafutsal.com and https://unitedfutsal.com/ (last visited May 15, 2018). The unitedfutsal.com site reflects the Raleigh, NC address.

[43] *See* https://www.facebook.com/USAFutsal (last visited May 15, 2018).

[44] *See* https://www.instagram.com/usafutsal (last visited May 15, 2018).

[45] The page https://twitter.com/USAFutsal redirects to https://twitter.com/account/suspended (last visited May 15, 2018).

[46] Minute Entry – ECF No. 30.

default judgment against the defendant and (2) the plaintiff's counsel to contact the defendant to possibly work out the scope of the relief. The court thus issues this order.

# ANALYSIS

## 1. Jurisdiction and Service

Before entering a default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A court also must ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06-0325 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

### 1.1    The Court Has Subject-Matter Jurisdiction

First, the court has subject-matter jurisdiction because the plaintiff brings claims under the Lanham Act, 15 U.S.C. § 1114 *et seq*., and therefore invokes federal-question jurisdiction. *See* 28 U.S.C. § 1331.

### 1.2    The Court Has Personal Jurisdiction

"It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (default-judgment case) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). Personal jurisdiction may be either general or specific. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–802 (9th Cir. 2004). The court has specific personal jurisdiction over the defendant.[47]

California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *Schwarzenegger*, 374 F.3d at 800–01. To establish specific personal jurisdiction in the forum state, the court applies the following three-prong test:

---

[47] The plaintiff contended in its motion that the court has general personal jurisdiction and specific personal jurisdiction over the defendant. Mot. – ECF No. 15 at 13–14. The plaintiff agreed at the March 16, 2018 hearing that specific jurisdiction was a more appropriate basis for personal jurisdiction.

1.  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2.  The claim must be one which arises out of or relates to the defendant's forum-related activities; and

3.  The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802. "The plaintiff bears the burden of satisfying the first two prongs of [this] test." *Id.* The burden then shifts to defendants to present a compelling case that the exercise of jurisdiction would be unreasonable. *Id.*

### 1.2.1    Purposeful Direction

The first prong of the specific-jurisdiction test requires a defendant to "purposefully avail" itself of the privilege of conducting business in the forum or "purposefully direct" activities toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). The Ninth Circuit generally uses the purposeful direction test for trademark-infringement cases. *See Panavision*, 141 F.3d at 1321 (applying purposeful direction analysis to trademark-infringement lawsuit because it is "akin to a tort case.").[48]

Purposeful direction exists when a defendant commits an act outside the forum that was intended to and does in fact cause injury within the forum. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). Under the "effects" test, the defendant must (1) commit an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (quoting *Mavrix Photo, Inc. v. Brand Tech.*, 647 F.3d 1218, 1228 (9th Cir. 2011)). The "'effects' test . . . focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228. "However, referring to the Calder test as an 'effects' test can be misleading. For this reason, we have warned courts not to

---

[48] The plaintiff argues both purposeful direction and purposeful availment. Mot. – ECF No. 15 at 14–15 (the defendant "purposefully availed itself of the benefits of doing business in California" and the defendant uses its website and social media accounts to "purposefully direct to California consumers its marketing and sales activities."). The court limits its analysis to purposeful direction. *See Panavision Int'l*, 141 F.3d at 1321.

focus too narrowly on the test's third prong — the effects prong — holding that 'something more' is needed in addition to a mere foreseeable effect." *Pebble Beach Co. v. Caddy*, 453 F.3d 1153, 1156 (9th Cir. 2006) (citation omitted).

First, the defendant must commit an intentional act. Intent means "an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of the act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quotation omitted). Here, the plaintiff alleged that the defendant committed intentional acts by willfully using the name U.S.A. Futsal to advertise and sell futsal products and services.[49] This sufficiently establishes an intentional act. *See Levi Strauss & Co. v. Toyo Enter. Co.*, 665 F. Supp. 2d 1084, 1093–94 (N.D. Cal. 2009) (allegation that the defendant manufactures and sells products that directly infringe the plaintiff's trademarks met the intentional act requirement).

Second, conduct must be expressly aimed at the forum. *Brayton Purcell*, 606 F.3d at 1129 ("'[S]omething more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction.") (quotation omitted)). Express aiming exists "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (internal quotations and citations omitted); *Pebble Beach*, 453 F.3d at 1157 (the "expressly aiming" standard is satisfied when "individualized targeting" is present).

Here, among other things, the plaintiff alleges that the defendant advertised by email and its website a Summer 2017 futsal camp in San Francisco.[50] A screenshot of the defendant's twitter account (Exhibit L) displays the following captions to pictures of futsal teams:

> Day 1 of the #Elite96 San Francisco/Oakland's afternoon session. Hard workers with a lot of passion for futsal!

> #Elite96 San Francisco/Oakland is officially in full swing! Check out some great shots from our morning session yesterday![51]

---

[49] Compl. – ECF No. 1 at 9 (¶¶ 42–43).

[50] Davis Decl. – ECF No. 15-1 at 4 (¶ 16).

[51] Ex. L – ECF No. 1-12 at 1.

The plaintiff also alleges that the defendant provides identical futsal-related goods and services.[52] These uncontested allegations demonstrate "individualized targeting" of California markets. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding in trademark-infringement case that the defendant "specifically targeted consumers" in Nevada by running advertisements directed at Nevada); *Brayton Purcell*, 606 F.3d at 1130–31 (nonresident defendant in copyright-infringement case "individually targeted" plaintiff by using copyrighted materials to enter direct competition with the plaintiff). Furthermore, the plaintiff alleges that the defendant's use of the U.S.A. Futsal mark in California is depriving the plaintiff of sales and reducing the value and goodwill of the plaintiff's registered marks.[53] The plaintiff feels these lost-profits and the diminution of its marks in its principal place of business: California.[54] *Panavision*, 141 F.3d at 1322 (defendant in trademark-infringement suit expressly aimed at California because it injured plaintiff with principal place of business in California); *accord Levi Strauss & Co.*, 665 F. Supp. 2d at 1093.

Third, the defendant's intentional act must cause harm that the defendant knew was likely to be suffered in the forum. *Brayton*, 606 F.3d at 1131. This element is satisfied when the defendant's act has 'foreseeable effects' in the forum. *Id.* Here, it was foreseeable that the plaintiff would be harmed by infringement of its marks, including harm to its business reputation and goodwill, and decreased business. *Id.* The plaintiff alleges that the defendant knew of the plaintiff's exclusive rights to its mark, which it used "to great success for 35 years."[55] It informed the defendant of the infringement in a cease-and-desist letter, and the defendant refused to stop using the marks.[56] These allegations establish sufficiently that the defendant knew that the harm was likely to be suffered in California, the plaintiff's principal place of business. *Id.*; *see Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (foreseeable harm in

---

[52] Compl. – ECF No. 1 at 3 (¶¶ 5–6).

[53] *Id.* at 12 (¶¶ 63–64).

[54] *Id.* at 3 (¶ 5).

[55] *Id.* at 8 (¶ 37).

[56] *Id.* at 9 (¶ 44).

trademark-infringement lawsuit because the defendant "likely knew that any harm suffered by [the plaintiff] would be suffered in California, as [the plaintiff's] principal place of business is in California.").

### 1.2.2 Forum-Related Activities

The second prong of the specific-jurisdiction analysis requires that the plaintiff's claims arise from the defendant's forum-related activities. *Panavision*, 141 F.3d at 1322. The requirement is satisfied if the plaintiff would not have been injured "but for" the defendant's forum-related conduct. *Id.*; *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, the plaintiff has shown sufficiently that, absent the defendant's conduct, it would not have been injured. The plaintiff alleges that the defendant used a mark that is confusingly similar to its own mark, that it did so in California in the same line of business, and that as a result, the use had the effect of injuring the plaintiff in California.[57] *See Levi Strauss & Co.*, 665 F. Supp. 2d at 1094.

### 1.2.3 Reasonableness

The final prong of the specific-jurisdiction test is that the exercise of jurisdiction must comport with fair play and substantial justice. *Panavision*, 141 F.3d at 1322. A court considers seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

There is a presumption of reasonableness when the first two prongs have been met, and a defendant must present a "compelling case" that jurisdiction is unreasonable. *Schwarzenegger*, 374 F.3d at 802. Here, because the defendant has not appeared, it has not raised any challenge to the reasonableness of the court's exercise of jurisdiction over it. The record does not suggest any

---

[57] *Id.* at 11 (¶ 60), 12 (¶ 63).

compelling reason why the court should decline to exercise jurisdiction over the defendant. *See*

*Levi Strauss & Co.*, 665 F. Supp. 2d at 1094.

In sum, there is specific personal jurisdiction.

### 1.3 The Plaintiff Served the Defendant

Under Federal Rule of Civil Procedure 4(h)(1)(B), service on a corporation, partnership, or association may be made by delivery to an authorized agent. The defendant must be served within 90 days after the complaint is filed. Fed. R. Civ. Proc. 4(m). Proof of service must be made to the court. Fed. R. Civ. Proc. 4(l)(1).

Here, as described in the Statement, the plaintiff personally and timely served the complaint on Robert David Andrews — Manager and President of defendant USA Futsal — at the Highland Village, Texas address[58] and filed a proof of service with the court.[59] The plaintiff also served the motion for default judgment on Mr. Andrews by mail addressed to the registered office in Raleigh, North Carolina, and the principal office in Highland Village, Texas.[60] As the Statement describes, these are the defendant's addresses. Service was timely and proper.

## 2. Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The court need not make detailed findings of fact. *Combs*, 285 F.3d at 906 (9th Cir. 2002). Default judgment cannot differ in kind from or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

---

[58] Proof of Service – ECF No. 9 at 1–2.

[59] *Id.*

[60] Davis Decl. – ECF No. 15-1 at 3 (¶ 12).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment," *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); that decision lies within the court's discretion, *Draper*, 792 F.2d at 924–25. Default judgments are generally disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In deciding whether to enter a default judgment, the court considers: "(1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471–72.

The *Eitel* factors favor default judgment here.

### 2.1 The Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *Id.* at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). This factor weighs in favor of default judgment. The plaintiff filed the lawsuit in July 2017 and served the complaint and the default-judgment motion on the defendant. The defendant has not defended the action. If the court does not grant default judgment, the plaintiff is without recourse.

### 2.2 The Merits and Sufficiency of the Claims (Second and Third *Eitel* Factors)

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "The Ninth Circuit has suggested that [these factors] . . . require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). The plaintiff moves for default judgment on its two federal claims: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; and (2) false designation of origin, in violation of 15 U.S.C. § 1125(a).

### 2.2.1    Trademark Infringement

To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization "any reproduction, counterfeit, copy, or colorable imitation of the" mark "in connection with the sale, offering for sale, distribution, or advertising of any goods and services;" and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive. 15 U.S.C. 1114(1); *Yelp v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014); *see Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (to prevail on a trademark-infringement claim, a plaintiff must show that there is "(1) a valid, protectable trademark, and (2) that . . . use of the mark is likely to cause confusion.").

The plaintiff has met these requirements.

First, the plaintiff owns the trademarks at issue. "Federal registration provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *see also Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) ("When a plaintiff pursues a trademark action involving a properly registered mark . . . the burden of proving that the mark is generic rests upon the defendant."); *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) ("In cases involving properly registered marks, a presumption of validity places the burden of proving genericness upon the defendant."); *Brookfield Commc'ns, Inv. v. W. Coast Entm't Corp.*, 174 F.3d 1046, 1047 (9th Cir. 1999).

Second, the defendant used the marks without authorization.

Third, the defendant's use of the mark was likely to cause confusion. To assess the likelihood of confusion for trademark-infringement cases, courts in the Ninth Circuit apply the eight factors identified in *AMF, Inc. v. Sleekcraft Boats*: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d 341, 349 (9th

Cir. 1979); *see iCall, Inc. v. Tribair, Inc*., No. C–12–2406 EMC, 2012 WL 5878389, at *5 (N.D.

Cal. Nov. 21, 2012); "The test is a fluid one and the plaintiff need not satisfy every factor,

provided that strong showings are made with respect to some of them." *Survivor Media, Inc. v.

Survivor Prods*., 406 F.3d 625, 631 (9th Cir. 2005). In *GoTo.com, Inc. v. Walt Disney Co*., the

Ninth Circuit found that "the three most important *Sleekcraft* factors are (1) the similarity of the

marks, (2) the relatedness of the goods or services, and (3) the . . . marketing channel." 202 F.3d

1199, 1205 (9th Cir. 2000); *see Brookfield Commc'ns*, 174 F.3d at 1054 (the "similarity of the

marks and whether the two companies are direct competitors — will always be important").

     Here, based on the uncontested allegations, the "three most important *Sleekcraft* factors" —

the similarity of the marks, the relatedness of the goods or services, and marketing channel — are

met. One, the marks are similar: the plaintiff's marks are "United States Futsal" and "U.S. Futsal,"

and the defendant's mark is "USA Futsal." They are not identical, but the descriptive "U.S."

"USA" and "United States"— attached to the word "Futsal" — add to the marks' similarity.[61] *See

Sleekcraft*, 599 F.2d at 351 (acknowledging that "craft" is a "generic frequently used in trademarks

on boats" but adding that "the common endings do add to the marks' similarity").[62] Two, the

parties operate in the same niche market: both operate futsal leagues and tournaments, and both

sell futsal-related goods.[63] Three, the parties use the same trade channels, including marketing

through their websites and social-media platforms.[64] An ordinary consumer likely would be

confused. *See Brookfield Commun. Inc.*, 174 F.3d at 1050 ("[t]he failure to prove instances of

actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard

to prove; difficulties in gathering evidence of actual confusion make its absence generally

unnoteworthy").

---

[61] Compl. – ECF No. 1 at 8 (¶ 39).

[62] The PTO refused the defendant's application to trademark "USA Futsal" based on a likelihood of confusion. *Id.* at 8 (¶ 36).

[63] *Id.* at 7 (¶ 26).

[64] *Id.* at 6 (¶ 25), 7 (¶¶ 31–33).

### 2.2.2 False Designation of Origin

The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). "To this end, section 43(a) of the Act, 15 U.S.C. § 1125(a), proscribes 'the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.'" *Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770, at *2 (N.D. Cal. May 10, 2010) (quoting *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th Cir. 2005)). More specifically, section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), states in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Thus, to establish a claim for trademark infringement or false designation of origin under Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, that (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. *Freecycle Network v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); *see Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980) (claims under Section 43(a)(1)(A) of the Lanham Act for trademark infringement, false designation of origin, or unfair competition may be proven by the same elements as common-law unfair competition; the federal prohibitions on trademark

infringement and false designation of origin each "preclude the use of another's trademark in a manner likely to confuse the public about the origin of goods") (citing *New West Corp. v. NYM Co. of California Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation [under Section 43(a)(1)(A)] infringement, unfair competition or false designation of origin, the test is identical[:] [I]s there a 'likelihood of confusion?'")). These elements largely track those of trademark infringement. *Oppenheimer v. Allvoices, Inc.*, No. 14-cv-00499-LB, 2014 WL 2604033, at *10 (N.D. Cal. June 10, 2014); *see JL Beverages Co. LLC v. Jim Beam Brands*, 828 F.3d 1098, 1106 (9th Cir. 2016) (*Sleekcraft* factors apply to false-designation-of-origin claims).

Here, the defendant used the marks in a manner that was likely to confuse consumers. For the reasons stated in the analysis regarding trademark infringement, the merits and sufficiency of the plaintiff's allegations favor entering default judgment on the claims for false designation of origin under § 1125(a). *See JL Beverages*, 828 F.3d at 1104–05 (analyzing false-designation-of-origin and trademark claims together).

### 2.3 The Sum of Money at Stake (Fourth *Eitel* Factor)

The fourth *Eitel* factor addresses the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. When the money is substantial or unreasonable, default judgment is discouraged. *See id*. at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. S. Elec. Inc.*, No. 09-32 JF (RS), 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Tr. v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd. of Tr. of the Sheet Metal Workers Health Care Plan of N. Cal. V. Superhall Mechanical, Inc.*, No. C 10-2212 EMC, 2011 WL 2600898, at *2–*3 (N.D. Cal. June 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate as they were supported by adequate evidence provided by the plaintiffs).

The plaintiff asks only for its costs of $1,167.22 and injunctive relief.[65] This factor supports default judgment.

### 2.4 The Possibility of a Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a defendant's failure to respond was likely due to excusable neglect. *Eitel*, 782 F.2d at 1471–72. In *Eitel*, there was both a factual dispute and excusable neglect. *Id.* at 1472. There, the defendant disputed material facts in the (untimely) answer and counterclaim. *Id.* Moreover, the defendant's response was late because the parties had previously agreed to "what appeared to be a final settlement agreement" and "[the defendant] reasonably believed that the litigation was at an end[.]" *Id.* Because of his reasonable reliance and prompt response when the agreement dissolved, the defendant's untimely response appeared due to excusable neglect. *Id.*

The facts here are different. The plaintiff served the defendant with the complaint, its motion for default judgment, and other papers along the way. The defendant never appeared. There is no evidence of a factual dispute or excusable neglect. These factors support default judgment.

### 2.5 The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits (Seventh *Eitel* Factor)

The seventh *Eitel* factor is the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1472; *see also Pena v. Seguros La Commerical, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314 at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits[,] . . . [as] when a party fails to defend against an action[.]" *Id.*

The defendant has not defended the lawsuit. Litigation on the merits is not possible. Default judgment is appropriate. Fed. R. Civ. P. 55(a); *Board of Trustees v. RBS Washington Blvd LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010).

---

[65] Supplemental Br. – ECF No. 25 at 2.

*     *     *

In sum, the Eitel factors weigh in favor of granting default judgment. In the next section, the court considers the scope of relief.

### 3. Relief Sought

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer. *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008); *Board of Trustees of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3– 5 (N.D. Cal. June 17, 2009). The plaintiff seeks injunctive relief and an award of costs.[66]

#### 3.1 Injunctive Relief

The plaintiff asks the court to enter a permanent injunction.

The Lanham Act provides for injunctive relief to prevent future trademark infringement. 15 U.S.C. § 1116. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). To determine if injunctive relief is appropriate in a particular case, "district courts should apply 'traditional equitable principles[.]'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). Those traditional equitable principles require a plaintiff to demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law … are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

---

[66] Supplemental Br. – ECF No. 25.

Putting aside (for now) the issue of mootness (discussed below), and considering only the complaint's allegations of harm, the factors militate in favor of an injunction. The defendant is using the plaintiff's mark, causing confusion and usurping the plaintiff's reputation and goodwill. *See Herman Miller Inc. v. Alphaville Design Inc.*, No. C 08-03407 WHA, 2009 WL 3429739, at * 9 (N.D. Cal. Oct. 22, 2009) (permanent injunction appropriate when the defendant's "infringement has caused irreparable injury by hurting the goodwill" of the plaintiff's brand). The balance of hardships tips in the plaintiff's favor: the defendant is "in default and has not demonstrated that it would incur any irreparable hardship from being permanently enjoined against infringing" the plaintiff's trademark. *Bittorent, Inc. v. Bittorent Mktg. GMBH*, No. 12-cv-02525-BLF, 2014 WL 5773197, at *13 (N.D. Cal. Mar. 8, 2018).

The next issue is the appropriate scope of injunctive relief. Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction … (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail … the act or acts restrained or required." Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law. *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) ("Injunctive relief under the Lanham Act must be narrowly tailored to the scope of the issues tried in the case."); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006).

The plaintiff's proposed permanent injunction is set forth in ECF No. 25-1 and enjoins the defendant from:

1. Using the Infringing Mark, either alone or in conjunction with any other words or symbols, or any phonetically or visually similar words or symbols in any combination, in connection with futsal-related services and goods or any related goods or services, including futsal training, events, clubs, leagues, tournaments, secondary medical insurance, player development programs, player identification programs, and coaching education for futsal leagues, and related clothing and sporting goods, within the Territory;

2. Using or continuing to use the Infringing Mark, either alone or in conjunction with any other words or symbols, or any phonetically or visually similar words or symbols in any combination in connection with any marketing or advertising or any other promotional materials relating to futsal or any related goods or services, including with futsal-related services and goods or any related goods or services, including futsal training, events, clubs, leagues, tournaments, secondary medical insurance, player development programs, player

identification programs, and coaching education for futsal leagues, and related clothing and sporting goods, viewable within the Territory;

3. Further infringing on plaintiff's U.S. FUTSAL and UNITED STATES FUTSAL marks by using the Infringing Mark or any confusingly similar trademark, service mark, name, term, or designation in any manner or place within the Territory, including through any website, including but not limited to defendant's website, or any URL with a confusingly similar name, and any social media, including but not limited to defendant's social media pages;

4. Filing any application for registration with any government agency, including but not limited to the United States Patent and Trademark Office, of any trademark or service mark that contains the words USA FUTSAL;

5. Further infringing, in any manner, contributing to infringement, or participating in the infringement by others, of any of plaintiff's trademarks, and from acting in concert with, aiding or abetting others, to infringing any of plaintiff's trademarks in any way;

6. Causing likelihood of confusion, deception, or mistake as to the source, nature, or quality of defendant's goods and services;

7. Engaging in any other activity constituting unfair competition with plaintiff, or constituting an infringement of any of plaintiff's marks, or of plaintiff's rights in, or to use, or to exploit, said trademarks, or constituting any injury to or dilution of any of plaintiff's names, marks, reputation, or goodwill;

8. Secreting, destroying, altering, removing, or otherwise using its infringing advertising and promotional materials or any records that may contain information relating to the developing, producing, selling, marketing, offering for sale, advertising, and/or promoting of any and all futsal-related services and goods infringing plaintiff's U.S. FUTSAL and UNITED STATES FUTSAL marks;

9. Aiding and abetting, contributing to, or otherwise assisting anyone in infringing upon plaintiff's U.S. Futsal and United States Futsal marks; and

10. Effecting assignments or transfers, forming new entities or association, or using any other device with the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs 1 through 9, above[.][67]

It also requires the defendant to disclose infringing activities to the court within 30 days of the

court's order and to re-label its goods and services to the extent that they bear the infringing USA

Futsal mark.[68]

Based on the allegations in the complaint, the plaintiff's proposed injunction is tailored to the

harm. *Price*, 390 F.3d at 1117. But as summarized in the Statement, and apparently after the

plaintiff filed the lawsuit, the defendant changed its name to United Futsal Association, changed

---

[67] Proposed Order – ECF No. 25-1 at 3–5; *see* Compl. – ECF No. 1 at 17–19 (¶¶ 7–12) (request for injunction).

[68] Proposed Order – ECF No. 25-1 at 5.

its corporate name to A2 Sports LLC, stopped using the infringing marks, and took down the offending social-media sites. A defendant's cessation of infringing activities can moot a claim for injunctive relief.[69] *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986). But normally, the defendant establishes that the infringing activity ceased, and "the reform of the defendant must be irrefutable and total." *Id.* at 1135 (quoting 2 J. McCarthy, Trademarks and Unfair Competition § 30:6, at 471 (2d ed. 1984)). Here, we have a defaulting defendant. That said, arguably, there is no longer a substantial possibility that the defendant will engage in continued infringing activity. But because the defendant's continued non-use of the infringing name is not assured, arguably, injunctive relief is warranted. *See E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 468 (N.D. Cal. 1991).

The court reserves the issue until it receives the plaintiff's June 21 update about the status of its outreach to the defendant (as discussed in the Introduction and Statement, *supra*).

### 3.2 Costs

The plaintiff is entitled to its costs. 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d)(1); *Coach, Inc. v. Diana Fashion*, No. 11-2315 SC, 2011 WL 6182332, at *5 (N.D. Cal. Dec. 13, 2011). Entry of default judgment constitutes success on the merits for the prevailing party.

### CONCLUSION

The court issues this order to facilitate the parties' possible resolution of the case and directs an update by June 21, 2018. Thereafter, if the parties have not worked out the dispute, the court will direct the Clerk of Court to reassign the case to a district judge and will recommend that the

---

[69] *Robert Stigwood Grp., Ltd. v. Hurwitz*, 462 F.2d 910, 913(2nd Cir. 1972) (must be a "cognizable danger of recurrent violation, something more than the mere possibility"); *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1992) (trial court has discretion to deny an injunction when the conduct has ceased and is not likely to recur); *W. Wind Energy Corp. v. Savitr Capital, LLC*, No. C 12-4806 PJH, 2013 WL 3286190, at *2 (N.D. Cal. June 27, 2013) (request for injunctive relief moot in light of the corrective actions taken by defendant); *Employers Ins. of Wausau v. Am. Int'l Specialty Lines Ins. Co.*, No. C-02-04976 RMW, 2005 WL 1220945, at *4 (N.D. Cal. May 23, 2005) (plaintiff's trademark claim "essentially mooted" because defendant redesigned its packages and labeling); *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 975 (N.D. Cal. 2006) (plaintiff either lacks standing or trademark claim is moot based on defendants' statement that it does not and will not use the mark).

newly assigned judge grant the plaintiff's motion for default judgment, enter judgment in the amount of the plaintiff's costs, and potentially permanently enjoin the defendant from infringing on the plaintiff's marks.

The court directs the plaintiff to serve this order on the defendant.

**IT IS SO ORDERED.**

Dated: May 21, 2018

_____
LAUREL BEELER
United States Magistrate Judge